UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HEATHER ELUZIARIO

    Plaintiff,

v.                                              Case No:   8:14-cv-2827-T-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Heather Eluziario seeks judicial review of the denial of her claim for Social Security disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the briefs and the applicable law.  For the reasons discussed herein, the decision of the Commissioner is reversed, and this matter is remanded pursuant to 42 U.S.C. § 405(g), sentence four.

I.     Issues on Appeal

Plaintiff raises four issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge John B. Gatto (the "ALJ") at step two that only Plaintiff's multiple sclerosis ("MS") is a severe impairment and whether he properly considered all her impairments in combination in her RFC analysis; (2) whether the

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

ALJ properly evaluated the credibility of Plaintiff's subjective complaints; (3) whether the ALJ failed to properly include in his hypothetical question to the VE all of Plaintiff's limitations; and (4) whether the Appeals Council properly considered new evidence submitted when it denied Plaintiff's Request for Review.

## II.   Procedural History and Summary of the ALJ Decision

Plaintiff, who was thirty years old at the time of the ALJ's decision, completed one year of college, is a licensed practical nurse ("LPN") and previously worked as a medical assistant, medical secretary and nurse.  Tr. 40, 156, 171, 189.  On May 12, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits alleging she became unable to work on December 1, 2010 due to multiple sclerosis, anxiety, depression, double vision, weakness and numbness in her arms and legs, neck and back pain and daily headaches and migraines.  Tr. 156, 170.  The claims were denied initially on August 24, 2011 and upon reconsideration on September 19, 2011.  Tr. 87-91, 95-99.  Plaintiff then requested and received a hearing before the ALJ on September 27, 2011, during which she was represented by a non-attorney representative.  Tr. 36-60, 100-101.  Plaintiff and vocational expert ("VE") Tennyson Wright testified at the hearing.  Tr. 36-60.  The ALJ issued an unfavorable decision on April 9, 2013.  Tr. 20-30.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.  Tr. 22.  At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 1, 2010.  Tr. 22.  At step two, the ALJ found that Plaintiff has the

severe impairment of multiple sclerosis. *Id.* He found that this impairment causes "significant limitation in her ability to perform basic work-related activities." *Id.* The ALJ considered Plaintiff's other allegations of physical impairments – degenerative disc disease, double vision, weakness/numbness in her arms and legs, neck/back pain and migraines – and determined these impairments are not "severe" within the meaning of the Social Security Act because they constitute "only a slight abnormality having such a minimal effect on [Plaintiff] that they would not be expected to interfere with her ability to work." *Id.* at 22-23 (citing *Stone v. Heckler*, 752 F.2d 1033 (5th Cir. 1985)). The ALJ also considered Plaintiff's alleged mental impairments of anxiety, depressive disorder, panic disorder and post-partum depression and found that "considered singly and in combination, do not cause more than minimal limitation of [Plaintiff's] ability to perform basic mental work activities" and thus are not severe. *Id.* at 23. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 . . ." *Id.* at 24. Taking into account the effect of all of Plaintiff's impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

---

[2] The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work,

> [O]nly occasional climbing of ladders, ropes and scaffolds, only occasional squatting, allowing for a sit/stand at will option providing not off task more than 10 percent of the work period, no concentrated exposure to hazards such as machinery and heights, etc., and handling and fingering limited to frequently.

*Id.* at 24. The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and the limiting effects of the symptoms are not entirely credible for the reasons explained in the decision. Tr. 25. Next, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a medical assistant or licensed practical nurse. Tr. 28. At step five, considering Plaintiff's "[RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines" and relying on the VE testimony, the ALJ found that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as bench assembler, office helper and information clerk. *Id.* at 29. Accordingly, the ALJ ruled that Plaintiff has not been disabled through the date of the decision. Tr. 29-30. Two months after the hearing, Plaintiff submitted to the Appeals Council additional medical records dated May 2013. Tr. 721-726. On July 15, 2014, the Appeals Council denied Plaintiff's request for review. Tr. 9-11. Accordingly, the ALJ's April 9, 2013 decision is the final decision of the

---

you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Commissioner. Plaintiff filed an appeal in this Court on November 12, 2014. Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520; 416.920.  The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390

(1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Commissioner*, ---F.3d----, 2015 WL 8754457 at *2 (11th Cir. 2015), *citing Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the

evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 2015 WL 1453364 at *2 (11th Cir. 2015), citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).

## IV. Analysis

### a. Severity of Plaintiff's impairments at step two and combined effect on RFC.

Plaintiff first asserts the ALJ failed to properly consider the combined effects of her multiple sclerosis with her other alleged impairments – degenerative disc disease; migraines and chronic headaches; neck and back pain; double vision, leg and arm weakness and numbness; and anxiety and depression – despite that these other impairments are the most common symptoms of multiple sclerosis, and they are well documented in the medical records. Doc. 26 at 10. Plaintiff argues that the ALJ should have considered these impairments severe at step two and in combination with her multiple sclerosis in his RFC analysis at steps four and five of the sequential evaluation process. Doc. 26 at 11-13. The Commissioner asserts that other than her multiple sclerosis, Plaintiff failed to show any of these other impairments significantly affected her ability to perform work-related activities and thus are severe. Doc. 27 at 4. Moreover, the Commissioner argues, any error in the ALJ's finding that these other impairments are not severe is harmless because he found in Plaintiff's favor at step two and continued his analysis in the remaining steps in the sequential evaluation process. *Id.*

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If

the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three. *See* 20 C.F.R. § 404.1520(a)(4). This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*, *see* 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work. *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, because the ALJ failed to specifically address relevant objective medical evidence concerning Plaintiff's alleged disability due to her double vision or diplopia, the Court is unable to do a meaningful review to determine whether the ALJ's

decision at step two, or at subsequent steps in the sequential evaluation process, is supported by substantial evidence. Accordingly, the decision must be reversed and remanded to the Commissioner for consideration of these medical records.

The ALJ determined at step two that Plaintiff suffered from one severe impairment – multiple sclerosis. Tr. 22. With respect to her other alleged physical impairments – degenerative disc disease; migraines and chronic headaches; neck and back pain; double vision, and leg and arm weakness numbness – the ALJ first discussed Plaintiff's emergency room examination on September 21, 2010, in which there were no abnormal head/face, eye, musculoskeletal or neurologic findings. Tr. 22, 338. The results of the musculoskeletal, neurologic, head, face and eye examinations revealed normal joint range of motion, no swelling or joint deformities, intake cranial nerves, and no motor or sensory deficits. Tr. 338. Her eye examination revealed equal pupils, round and reactive to light. *Id.* The ALJ also reviewed Plaintiff's May 2010 examination, in which Plaintiff complained of migraine headaches and bilateral forearm numbness. Tr. 22, 349-50. The record of that visit reveals that Plaintiff's headaches were stable and could be resolved by Ibuprofen. Tr. 368. As also noted by the ALJ, her physical examination was within normal limits. Tr. 22, 367. The physician recommended a neurological evaluation, and referred Plaintiff accordingly. Tr. 368.[3]

The ALJ also discussed Plaintiff's physical examination in May 2011, which

---

[3] Both the May 2010 examination and the September 2010 ER visit were prior to Plaintiff's alleged onset date ("AOD") of December 10, 2010.

was entirely within normal limits despite Plaintiff's complaints of migraine headaches. Tr. 22, 338. The ALJ next discussed Plaintiff's initial neurological examination by Dr. Siddharth H. Shah, M.D. on June 8, 2011. Tr. 23, 418-20. At that time, Plaintiff was still working as a nurse. Tr. 418. The examination revealed normal neurological and motor findings, negative straight leg raising, and ability to walk, heel-to-toe walk and tandem walk without problems. Tr. 23, 419. Plaintiff complained that her multiple sclerosis (which Dr. Shah stated most likely had been in relapse for the previous 10 years) and chronic headaches were worsening. Tr. 420. She also reported chronic arm and leg numbness sensations, the latter of which Dr. Shah attributed as secondary to her multiple sclerosis and diplopia. *Id.* He recommended further MRIs of Plaintiff's thoracic and cervical spine and prescribed Imitrex and Depakote for her headaches; Amantadine[4] for fatigue and switched her from Copaxone to Interferon disease modifying therapy for her MS. *Id.*

Plaintiff next saw Dr. Shah for a follow-up examination on July 21, 2011. Tr. 544. Plaintiff reported not being able to continue working as a nurse at that time because of her multiple sclerosis and the side effects of her treatment. Tr. 417. Dr. Shah noted that the Depakote was not helping control Plaintiff's headaches; and, while her previous symptoms were unchanged, she had new symptoms from side effects of the medication. *Id.* He also reported that Plaintiff was fatigued, which was not significantly improved with her medication. *Id.* He noted that an MRI of

---

[4] Amantadine also is used to treat Parkinson's disease and conditions similar to those of Parkinson's disease. https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682064.html.

her thoracic spine done on June 22, 2011 showed disc herniation at the T9-10 and T10-11 levels as well as focal disc herniation. *Id.* The MRI of her cervical spine done that same day showed no enhancing lesions and minimal spondylitic changes anteriorly at C4-5 and bulging discs at C5-6.[5]  Tr. 412-13, 417.

Plaintiff was next seen by Dr. Shah on September 1, 2011, during which her chronic headaches appeared stable with her medication (Topamax); although Dr. Shah still reported Plaintiff showed signs of fatigue, tiredness, anxiety and possible depression. Tr. 542. The ALJ discussed Plaintiff's emergency room visit on September 22, 2011, in which she complained of numbness in her left toes. Tr. 23, 468-83. She was diagnosed with an exacerbation of her multiple sclerosis, treated and released. Tr. 470. The next record of Plaintiff's visit to Dr. Shah was on September 27, 2011, which was discussed by the ALJ in his RFC analysis. Tr. 27, 485-86. Dr. Shah noted Plaintiff's leg pain was "much improved," but she still had trouble walking with the pain and had no feeling in her left foot muscles. Tr. 485. He further reported Plaintiff's previous multiple sclerosis symptoms were unchanged. *Id.* On examination, Plaintiff had diminished sensations in her legs to light touch, pinprick and vibration; and her gait, heel-to-toe walk and tandem walk were difficult. *Id.* Dr. Shah ordered additional tests, including a nerve study of Plaintiff's lower extremities, prescribed a trial of Neurontin and referred her to a neuro-ophthalmologist for her complaints of vision changes and blurriness. Tr. 486.

The ALJ discussed Plaintiff's nerve conduction studies from October 2011,

---

[5] The ALJ also discussed the MRI records. Tr. 22-23.

which showed no peripheral neuropathy or lumbar radiculopathy in her lower extremities. Tr. 23. These test results also were addressed by Dr. Shah in the record of Plaintiff's next visit on November 3, 2011. Tr. 488, 538-39. During that visit, Plaintiff still complained of weakness, tiredness, fatigue, leg spasms – more at night – and migraines every other day. Tr. 488. Dr. Shah increased her Topamax, Baclofen and Amantadine. *Id.* He further noted she was tolerating Copaxone fine and reported Plaintiff "feels ok." *Id.*

Although not at all addressed by the ALJ in his opinion, in January 12, 2012, Dr. Shah referred Plaintiff to the University of South Florida Eye Institute for a neuro-ophthalmologic consultation. Tr. 583. Dr. Mitchell Drucker, M.D., performed the examination and ordered lab testing and MRIs of Plaintiff's brain and orbits. *Id.* The brain MRI showed extensive abnormal signal through the white matter, which is consistent with inactive demyelinating plaques of multiple sclerosis in a patient with a history of MS, and no evidence of active demyelination. Tr. 574. It also showed a "relatively large pineal cyst." *Id.* The orbital MRI did not reveal demyelinating plaques on the optic nerves and other than remote inflammation surrounding the optic nerve was normal. Tr. 575-76.[6]

In February 2012, Dr. Drucker attempted to treat Plaintiff's diplopia with prisms on her glasses, but it only partially relieved her double vision. Tr. 678. He

---

[6] Although the ALJ discussed the brain MRI in his RFC analysis concerning her multiple sclerosis (Tr. 26), nowhere in his opinion did he address any of the records of Dr. Drucker, Dr. Hasan or the orbital MRI concerning Plaintiff's diplopia. *See generally* Tr. 22-26.

referred Plaintiff to another physician to evaluate whether surgery would be an option. Tr. 675-78. Records from Dr. Hasan in March and April 2012 indicated that Plaintiff needed surgery on her right eye but was not stable enough for the surgery. Tr. 587-88.

Although the ALJ stated that records from Plaintiff's visits to Dr. Shah in April, August and November 2012 showed normal clinical findings, (Tr. 23, 27), in the August 16, 2012 record, Dr. Shah noted that Plaintiff had been complaining of blurriness of her vision and had an "extensive workup" done by a neuro-ophthalmologist. Tr. 534. As noted, the ALJ did not discuss at all this aspect of Plaintiff's medical records. With respect to Plaintiff's physical limitations, the ALJ concluded:

> [A]lthough [Plaintiff] may have degenerative disc disease, double vision, weakness/numbness in arms and legs, neck/back pain, and migraines, these impairments as treated constitute only a slight abnormality having such a minimal effect on her that they would not be expected to interfere with her ability to work. These impairments are thus not "severe" within the meaning of the Act.

Tr. 23.

The law is clear in the Eleventh Circuit that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1168 (11th Cir. 2011). Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The court in *Winschel* reiterated that the ALJ must "state with at least some measure of clarity the grounds

for his decision" for the reviewing court to meet its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rationale. *Id.*

In this case, nowhere in the ALJ's opinion did he discuss, no less refer to, Dr. Drucker's examinations, his diagnosis and treatment of Plaintiff's diplopia nor his referral of Plaintiff to another physician for an opinion on whether surgery on her right eye was advisable. Tr. 572-83. Nor did the ALJ discuss the orbital MRI done on Plaintiff. Tr. 575-76. Furthermore, he did not discuss Dr. Hasan's records with regard to this diagnosis or treatment nor his opinion that Plaintiff needed surgery in her right eye. Tr. 587-88. Without specifically addressing the objective medical evidence of Plaintiff's diplopia, the Court's review on appeal is frustrated. The undersigned cannot determine whether substantial evidence supports the ALJ decision at step two that Plaintiff's diplopia was not severe or whether the ALJ properly considered the medical evidence concerning this alleged impairment in combination with Plaintiff's other impairments at subsequent steps of the sequential evaluation process.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d at 1232, 1238 (11th Cir. 2004). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to

assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a).

Although the Commissioner asserts that the ALJ's failure to find her other impairments as severe at step two is harmless error because the ALJ found her MS to be severe and continued with the sequential evaluation process, Doc. 27 at 8, the Court cannot make that determination. Here, the ALJ failed to address at all Plaintiff's medical records concerning her diplopia. Compounding that error and without further discussion, the ALJ in his RFC analysis simply referred back to his discussion in step two concerning Plaintiff's other alleged disabilities, including her diplopia, and noted they had been "addressed above." Tr. 25. He then continued to address only her MS in his RFC analysis. *Id.* This also was error, because the ALJ "is required to assess a claimant's RFC based on *all* of the relevant evidence in the record." 20 C.F.R. § 404.1545(a).

Accordingly, the Court will remand this case to the Commissioner to specifically address the objective evidence relating to Plaintiff's diplopia, state the weight given to this evidence, and re-evaluate whether this impairment is a severe impairment. Furthermore, the ALJ should consider this evidence in his RFC analysis.

### b. *Credibility of Plaintiff's subjective complaints*

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either

(a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard "is fully consistent with the Secretary's regulations." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, the ALJ failed to discuss at all Plaintiff's medical records concerning her diplopia, as discussed above. Because the ALJ's analysis of these objective medical records on remand may alter his determination of Plaintiff's credibility, the Court will defer addressing the issue of whether the ALJ erred in evaluating Plaintiff's

credibility, and direct the Commissioner to readdress this issue on remand, particularly Plaintiff's testimony and reports concerning her double vision.

### c. ALJ's hypothetical question to the VE.

Likewise, as the ALJ's analysis of the objective medical records concerning Plaintiff's diagnosis and treatment for diplopia on remand may alter the ALJ's determination of which of Plaintiff's limitations he includes in the hypothetical question to the VE, the Court will defer addressing this issue. As the Eleventh Circuit has held, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999), *quoted in Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Because the ALJ did not discuss all of Plaintiff's medical records, specifically those concerning diagnosis and treatment of her diplopia, the Court is unable to determine whether the hypothetical posed to the VE comprised all of Plaintiff's impairments. Thus, the Court cannot determine whether substantial evidence supports the VE's testimony. On remand, the Commissioner should direct the ALJ to review this evidence and pose a hypothetical to the VE that includes all of Plaintiff's impairments.

### d. New evidence to the Appeals Council.

Because on remand the ALJ must reconsider additional evidence in his RFC analysis and subsequent steps in the process, the ALJ also should specifically address the post-hearing evidence provided to the Appeals Council.

V.  **Conclusion**

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards, and thus his determination that the Plaintiff is not disabled is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

   A. review and consider all of Plaintiff's medical records concerning her alleged impairment of diplopia and determine the weight to be given to such evidence and the reasons therefor, and, further:

      i. whether it constitutes a severe impairment at step two;

      ii. the effect, if any, it has on his assessment of Plaintiff's RFC in combination with her other impairments; and

      iii. the effect, if any, on the hypothetical presented to the VE;

   B. re-evaluate Plaintiff's subjective complaints, credibility and testimony in light of the objective evidence in the record, including her medical records concerning her diplopia;

   C. consider the new evidence provided to the Appeals Council; and

   D. make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2. The Clerk of Court is directed to enter judgment in favor Plaintiff, Heather Eluziario, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record